823 P.2d 22

STATE of Arizona, Appellee,

v.

Richard Harley GREENWAY, Appellant.

No. CR–89–0199–AP.

Supreme Court of Arizona,
En Banc.

Dec. 3, 1991.

Reconsideration Denied Feb. 4, 1992.*

* Zlaket, J., did not participate in the determination of this matter.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser, Chief Counsel, and Paul J. McMurdie, Asst. Atty. Gen., Phoenix, for appellee.

Joseph P. St. Louis, Tucson, for appellant.

OPINION

CAMERON, Justice.

## I. JURISDICTION

Richard Greenway (defendant) was charged with and convicted of two counts of first degree murder pursuant to A.R.S. § 13–1105, one count of first degree burglary pursuant to A.R.S. § 13–1508, one count of armed robbery pursuant to A.R.S. § 13–1904, one count of theft by control pursuant to A.R.S. § 13–1802 and one count of arson of an unoccupied structure pursuant to A.R.S. § 13–1703. Defendant appeals from his convictions and death sentences on the two first degree murder counts pursuant to 17 A.R.S.Ariz.R.Crim. P., rule 31.2(b). We have jurisdiction pursuant to Ariz. Const. art. 6, § 5(3), and A.R.S. §§ 13–4031, 13–4033 and 13–4035.

## II. ISSUES PRESENTED

We must consider the following issues on appeal:

1. Is Arizona's death penalty statute, A.R.S. § 13–703, unconstitutional?

a. Was defendant's sixth amendment right to a jury trial violated because the judge, rather than the jury, made the finding as to the existence of aggravating and mitigating factors?

b. Does the aggravating factor of "especially heinous, cruel or depraved" allow for arbitrary imposition of the death penalty?

c. Does the Arizona statutory scheme impermissibly presume death to be the appropriate penalty once the state has proven one or more aggravating factors?

d. Is death by gas cruel and unusual punishment?

2. Was the sentencing judge unable to impose a sentence in a fair and impartial manner?

a. Was the judge privy to inadmissible evidence because he also presided over the codefendant's trial?

b. Should the judge have recused himself or been removed for cause because he read the pre-sentence report prior to sentencing the defendant?

3. Did the trial court err in finding the following aggravating factors:

a. That the murders were committed for pecuniary gain, A.R.S. § 13–703(F)(5);

b. That the murders were committed in a cruel, heinous or depraved manner, A.R.S. § 13–703(F)(6); and

c. That the defendant was convicted of one or more other homicides, which were committed during the commission of the offense, A.R.S. § 13–703(F)(8).

4. Did the trial court err by finding defendant's age to be the only mitigating factor without considering the following:

a. Persons who committed crimes similar to defendant's received life sentences;

b. Defendant's low I.Q.; and

c. Codefendant received a life sentence.

5. Did the State fail to prove that this defendant committed the murders, thereby precluding the imposition of the death penalty?

## III. FACTS AND PROCEDURAL HISTORY

On 28 March 1988, Pima County Sheriffs from Tucson found a 1983 Porsche 944, which had been burned and abandoned. Officials determined that the Porsche belonged to Frank and Lili Champagne. A deputy went to inform the Champagnes and discovered the bodies of Lili Champagne (Lili) and her daughter, Mindy Peters (Mindy). Lili had been shot once behind the left knee and once between the eyes. Mindy had been shot twice, once in the jaw and once behind the ear.

Following a news bulletin asking for information regarding the victims or the Porsche, defendant's sister notified homicide detectives that defendant knew something about the incident. Detectives picked up defendant at his sister's house. Defendant told detectives that he had met a man named "Red" at a 7–Eleven, and that Red had given both the defendant and Chris Lincoln (codefendant) a ride in a white Porsche. After driving around town, Red went to a Tucson address to visit his girl-

friend. According to defendant, Red told him to take the car and put gas in it. Defendant and codefendant rode around town for about an hour before returning to pick up Red. Red took them home, but returned a short time later to borrow a gas can.

The detectives had defendant retrace his trip with Red before taking him to the police station for questioning. In doing so, they went to the victims' residence. Defendant and codefendant were questioned separately, and codefendant confessed to the theft and arson of the Porsche and implicated defendant. During further questioning, codefendant confessed to participating in the killings and again implicated defendant. Both were arrested and charged with the murders of Lili and Mindy.

A search of defendant's trailer produced a set of keys fitting the Porsche. A search of codefendant's trailer produced ammunition identical to that used in the homicides and a portable stereo belonging to the victims. Detectives searched a neighbor's storage shed, which codefendant used, and found stereo equipment, gloves, a jacket and the murder weapon, a .22 caliber bolt action rifle with a loaded magazine. Defendant's fingerprint was found on the stock of the rifle and also on the driver's side of the Porsche.

Defendant was placed in a cell with Anthony Schmanski. Schmanski testified that when he asked defendant why he was in jail, defendant answered, "Well, I just blew two people away." When asked why, defendant responded that "they had seen his face." Schmanski notified authorities because defendant did not show "any remorse" and acted "nonchalant" about killing the victims.

Further investigation revealed that on the morning of 28 March 1988, defendant attempted to sell the victims' car stereo to Brian Mize, a coworker. Mize testified that defendant said he and a friend went to the victims' house, made sure that Lili and Mindy were in the same room, and entered through the garage. Defendant told Mize that after taking "some stuff" from the house, he sent codefendant out and then shot the victims. Defendant said that "after he shot the older lady that ... her body rolled over and blood gushed out of her head." According to Mize, defendant acted as if the murders were "just like something he would do on a weekend." Mize also testified that defendant said he had planned on going up to the house for two weeks and that he knew the girl and where she lived. Defendant also told Mize that he had taken a VCR and the Porsche and had later "torched" the car.

Mindy's friend, Linda Smolic, testified that defendant knew the victims. Defendant met Mindy and Linda around Christmas of 1987 at a local Jack-in-the-Box. He drove both of the girls to his trailer and later took them home. Defendant's sister found Mindy's wallet in her car and defendant returned the wallet to Mindy's mother at her house. A couple of months later, defendant drove Mindy and Linda to a party. According to Linda, this was the last time Mindy had any contact with the defendant.

After a four day trial, the jury returned guilty verdicts on all counts. At sentencing, the judge found three aggravating factors as to each first degree murder conviction: (1) that the murders had been committed for pecuniary gain, A.R.S. § 13-703(F)(5); (2) that the murders were especially heinous, cruel or depraved, A.R.S. § 13-703(F)(6); and (3) that defendant had been convicted of one or more homicides, which were committed during the commission of the offense, A.R.S. § 13-703(F)(8). The judge found defendant's age, 19 at the time of the killings, to be the only statutory mitigating factor. After considering all of defendant's proffered mitigating factors and finding them insubstantial to call for leniency, the trial court sentenced defendant to death on each of the first degree murder counts. Additionally, the court sentenced defendant to 21 years each for first degree burglary and armed robbery, 10 years for the theft by control and 5 years for arson of an unoccupied structure, the Porsche. All non-murder counts were to run consecutively to the death sentences and each other.

**160**

## IV. DISCUSSION

### 1. Constitutionality of the death penalty statute

■ Defendant argues that Arizona's death penalty statute, A.R.S. § 13–703, is unconstitutional because: (1) the judge, and not the jury, decides the existence of aggravating and mitigating factors; (2) the aggravating factor of "especially heinous, cruel, or depraved" allows for the arbitrary imposition of the death penalty; and (3) once the State proves one or more aggravating factors, death is presumed the proper sentence and the burden shifts to the defendant to prove mitigating factors to offset the aggravating factors.

The United States Supreme Court recently addressed these arguments in *Walton v. Arizona*, 497 U.S. 639, 110 S.Ct. 3047, 111 L.Ed.2d 511 (1990), *aff'g State v. Walton*, 159 Ariz. 571, 769 P.2d 1017 (1989), and held that Arizona's capital sentencing scheme is constitutional. This court has also previously rejected defendant's arguments. *See State v. Vickers*, 159 Ariz. 532, 768 P.2d 1177 (1989), *cert. denied*, — U.S. ——, 110 S.Ct. 3298, 111 L.Ed.2d 806, *rehearing denied*, — U.S. ——, 111 S.Ct. 14, 111 L.Ed.2d 829 (1990). We therefore find no error.

■ Defendant's next contention is that the trial court should have found in mitigation that death by lethal gas is cruel and unusual punishment. We disagree. The Arizona Constitution provides that all executions "shall be inflicted by administering lethal gas." Ariz. Const. art. 22, § 22. We also rejected this claim in *State v. Williams*, 166 Ariz. 132, 142, 800 P.2d 1240, 1250 (1987), *cert. denied*, — U.S. ——, 111 S.Ct. 2043, 114 L.Ed.2d 128 (1991). This argument has also been rejected at the federal level. *See Gray v. Lucas*, 710 F.2d 1048, 1061 (5th Cir.), *cert. denied*, 463 U.S. 1237, 104 S.Ct. 211, 77 L.Ed.2d 1453 (1983).

### 2. Was sentence imposed in a fair and impartial manner?

#### (a) *Was the judge privy to inadmissible evidence?*

■ Judge William Scholl presided over both defendant's and codefendant's trials. Defendant argues that because of this, Judge Scholl heard evidence of codefendant's version of the murder that was introduced at codefendant's trial. At codefendant's trial, the State introduced his statement to the police that codefendant shot "one of them in the leg," and that defendant said he placed a pillow "over the older lady's head ... and then shot her." According to codefendant, he knew that defendant was going to kill the victims because they had seen his face. Defendant argues that the trial judge is only human, and that it would have been impossible for him not to consider this information in sentencing.

To support his argument, defendant argues that Judge Scholl made the following findings at sentencing, even though defendant did not confess, no eyewitness testimony was given, and the State could not prove the order of the shots: (1) defendant fired the fatal shots into each of the victims; (2) defendant committed the offense in expectation of pecuniary gain; (3) defendant planned to go to the house prior to the date of the offense; (4) defendant ascertained that the victims were in the house, but he entered anyhow; (5) Lili was shot first in the leg; and (6) the victims suffered mental anguish prior to their deaths. Therefore, defendant contends that testimony received at codefendant's trial influenced the judge. We disagree.

■ We believe the evidence presented at trial and at the sentencing hearing allowed the trial court to find the aggravating factors without relying on the testimony received at codefendant's trial. Two witnesses at defendant's trial testified that defendant confessed the crimes to them, and defendant's sister testified during the sentencing hearing that defendant told her, "I did it." The evidence showed that defendant took the Porsche, drove it around town, and later set it on fire. Testimony showed that defendant attempted to sell the victims' car stereo to a coworker the very next morning. As for the sequence of the shots fired, Dr. Allen Jones testified

that Lili was shot first in the leg, and that this was neither a contact (the gun did not contact Lili's body when it was discharged) nor a fatal wound. The second shot, to the forehead, was both a contact and the fatal wound. It occurred after a sufficient length of time for someone to walk over, place a pillow over Lili's head and fire. We cannot accept defendant's argument that a pillow was already over Lili's head and that Lili was first shot in the head and then shot in the leg. Dr. Jones' testimony established that Lili was shot first in the leg and, sometime later, shot in the forehead. Because Lili was shot first in the leg, both victims were uncertain about their fates. The victims suffered mental anguish before their deaths. *See Walton,* 159 Ariz. at 586, 769 P.2d at 1032.

 Furthermore, the statements admitted at codefendant's trial were admitted at defendant's sentencing hearing to rebut defendant's mitigating evidence of non-violence and diminished mental capacity. The State may proffer hearsay statements to rebut a defendant's mitigating evidence. *State v. Nash,* 143 Ariz. 392, 402, 694 P.2d 222, 232, *cert. denied,* 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985); *State v. Ortiz,* 131 Ariz. 195, 208, 639 P.2d 1020, 1033 (1981), *cert. denied,* 456 U.S. 984, 102 S.Ct. 2259, 72 L.Ed.2d 863 (1982); *see also*

A.R.S. § 13–703(C) (any information that is relevant to mitigation may be presented and admitted regardless of the rules of evidence).[1] Because defendant knew about the statements and had an opportunity to either explain or deny them, their admission did not violate his due process rights. *See Gardner v. Florida,* 430 U.S. 349, 97 S.Ct. 1197, 51 L.Ed.2d 393 (1977) (defendant's due process rights were violated when death sentence was imposed on basis of confidential information that defendant neither had an opportunity to explain nor deny). Additionally, Judge Scholl stated, and the record reflects, that the statements were admitted *only* for rebuttal, and not for establishing any of the aggravating factors.

Furthermore, this court has held that it was not error for a trial judge to preside over a wife's trial and her husband's trial, and then sentence the husband. *Ortiz,* 131 Ariz. at 209, 639 P.2d at 1034. We have also held that, absent proof to the contrary, trial judges in capital cases are presumed capable of focusing on the relevant sentencing factors, setting aside the irrelevant, inflammatory and emotional factors. *State v. Beaty,* 158 Ariz. 232, 244, 762 P.2d 519, 531 (1988), *cert. denied,* 491 U.S. 910, 109 S.Ct. 3200, 105 L.Ed.2d 708 (1989). A trial "judge can separate the admissible

---

1. In *State v. Robinson,* 165 Ariz. 51, 796 P.2d 853 (1990), *cert. denied,* —— U.S. ——, 111 S.Ct. 1025, 112 L.Ed.2d 1107, *cert. denied, sub nom. Washington v. Arizona,* —— U.S. ——, 111 S.Ct. 1091, 112 L.Ed.2d 1195 (1991), two defendants were jointly tried and convicted of first degree murder. The State introduced one defendant's post-arrest statement at the sentencing hearing. The trial court used this statement in *establishing the aggravating factor* of pecuniary gain against the other defendant. In holding that the trial court erred in admitting the statement, this court stated:

> [The] rules of evidence include the right of an accused to confront adverse witnesses as guaranteed by the sixth amendment. Also, as a matter of right, post-arrest statements by non-testifying co-defendants may not be considered against the accused. *Bruton v. United States,* 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968).

*Robinson,* 165 Ariz. at 59, 796 P.2d at 861. Because we have held in the past that the confrontation clause "applies only to 'trials' and not to sentencing hearings," *Ortiz,* 131 Ariz. at 209, 639

P.2d at 1034, we must qualify the holding in *Robinson.*

In *Ortiz,* the State introduced defendant's wife's testimony from her trial to rebut the defendant's mitigating evidence of good character. We stated that defendant "was denied [only] the opportunity to rebut rebuttal evidence through cross-examination." "[G]iven the sentencing court's need for all relevant evidence ..." we found no error. 131 Ariz. at 209, 639 P.2d at 1034. In *Robinson,* the post-arrest statement of one defendant was used to prove an aggravating factor against another defendant and not to rebut any mitigating evidence. 165 Ariz. at 59, 796 P.2d at 861. Because A.R.S. § 13–703(C) has different standards for establishing aggravating and mitigating factors, the holdings of both *Ortiz* and *Robinson* are correct. A codefendant's statement, introduced at a sentencing hearing, does not violate defendant's sixth amendment right to confrontation, so long as it is introduced to rebut mitigating evidence. But, if the statement is introduced to establish an aggravating factor, defendant's constitutional right to confront the witness is violated.

from the inadmissible." *Id.* We find that Judge Scholl's findings at the sentencing hearing were based on relevant evidence presented at defendant's trial, as well as at the sentencing hearing.

### (b) *Should the judge have recused himself after reading the presentence report?*

Defendant argues that the trial judge could not impartially sentence defendant because he read the presentence report, which defendant states is misleading and prejudicial. Further, defendant argues that it is unrealistic to think that the trial judge could read the presentence report, refer to it only during the sentencing phase for the non-murder convictions, and not consider it for sentencing on the murder convictions. Therefore, the trial judge should have recused himself or been removed for cause.[2] We do not agree.

█ Defendant filed a rule 10.1 motion for a change of judge for cause prior to the sentencing hearing. *See* 17 A.R.S.Ariz. R.Crim.P., rule 10.1. Judge Jack Arnold heard arguments from both sides concerning whether another judge should be appointed for sentencing because Judge Scholl read the presentence report and presided over the separate trials of defendant and codefendant. In making his ruling, Judge Arnold stated:

> One of the duties of a judge and one of the responsibilities of a judge is to sort out relevant and irrelevant things, things that are probative and non-probative and make a fair decision.
>
> And I believe that when it is called to Judge Scholl's attention that he can address the problem in a judicial manner and make a fair and unbiased decision; if he can't do so, knowing Judge Scholl, he will announce that fact.

R.T. 5–19–89 at 13. This court has held that a judge shall not be removed absent a showing of bias or prejudice. *State v. Fierro,* 166 Ariz. 539, 548, 804 P.2d 72, 81 (1990) (defendant did not present evidence

of bias or prejudice due to trial judge's reading the presentence report prior to sentencing); *State v. McCall,* 160 Ariz. 119, 129–30, 770 P.2d 1165, 1175–76 (1989), *cert. denied,* —— U.S. ——, 110 S.Ct. 3289, 111 L.Ed.2d 798 (1990) (trial judge is presumed to be free of bias or prejudice); *State v. McMurtrey,* 151 Ariz. 105, 108, 726 P.2d 202, 205 (1986), *cert. denied,* 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 530 (1987) (judge not subject to removal by reason of having previously sentenced defendant, absent a showing of bias or prejudice); *State v. Richmond,* 136 Ariz. 312, 317, 666 P.2d 57, 62, *cert. denied,* 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983) (defendant is entitled to impartial judge but not one totally ignorant of previous proceedings).

█ Moreover, there is no *per se* disqualification of a sentencing trial judge who presides over a codefendant's trial. *State v. Thompson,* 150 Ariz. 554, 557, 724 P.2d 1223, 1226 (Ct.App.1986). "It is generally conceded that the bias and prejudice necessary to disqualify a judge must arise from an extra-judicial source and not from what the judge has done in his participation in the case." *Smith v. Smith,* 115 Ariz. 299, 303, 564 P.2d 1266, 1270 (Ct.App.1977) (citing *United States v. Grinnell Corp.,* 384 U.S. 563, 86 S.Ct. 1698, 16 L.Ed.2d 778 (1966)). The party seeking a judge's recusal must prove that the trial judge was biased or prejudiced by a preponderance of the evidence. *See State v. Perkins,* 141 Ariz. 278, 286, 686 P.2d 1248, 1256 (1984). Reviewing the record in its entirety, we do not find that defendant proved bias or prejudice by a preponderance of the evidence. We find no error in Judge Scholl's refusal to recuse himself or in Judge Arnold's refusal to disqualify Judge Scholl from sentencing defendant.

Defendant further claims that the trial judge stated he was considering everything in the presentence report. Therefore, defendant argues that the trial judge considered victim impact statements, which the United States Supreme Court held inadmis-

---

**2.** We are not concerned herein with a peremptory change or disqualification of the judge. *See*

17 A.R.S.Ariz.R.Crim.P., rule 10.2.

sible at capital sentencing hearings. *Booth v. Maryland*, 482 U.S. 496, 107 S.Ct. 2529, 96 L.Ed.2d 440 (1987). The United States Supreme Court, however, recently overruled *Booth's* holding that the eighth amendment prohibits the use and admission of victim impact statements at a capital sentencing hearing. *Payne v. Tennessee*, — U.S. —, 111 S.Ct. 2597, 115 L.Ed.2d 720 (1991). The Court stated:

> [I]f the State chooses to permit the admission of victim impact evidence and prosecutorial argument on that subject, the Eighth Amendment erects no per se bar. A state may legitimately conclude that evidence about the victim and about the impact of the murder on the victim's family is relevant to the jury's decision as to whether or not the death penalty should be imposed. There is no reason to treat such evidence differently than other relevant evidence is treated.

*Payne*, — U.S. at —, 111 S.Ct. at 2609, 115 L.Ed.2d at 736.

*Booth* dealt with jury sentencing, whereas in Arizona the trial judge determines whether the penalty shall be life imprisonment or death. *Beaty*, 158 Ariz. at 244, 762 P.2d at 531. A.R.S. § 13–703. *Booth* is, therefore, inapplicable in Arizona because a trial judge can set aside irrelevant, inflammatory and emotional factors. Defendant asks that we reconsider and overrule *Beaty* as it refers to the *Booth* rationale. We decline to do so.

■ Judge Scholl specifically stated that he was considering the factors presented at the aggravation-mitigation hearing *only* "as to counts one and two," the murder convictions. He further stated that "as far as aggravating factors as to the other counts, the court is considering everything that was in the presentence re-

port." We find that Judge Scholl, for purposes of aggravation, properly considered the presentence report as to all counts *except for the murder counts* and, as A.R.S. § 13–702(F) and (G) allow, he validly considered the victim impact statements in the presentence report when he sentenced defendant on the other counts.[3]

### 3. Aggravating Factors

■ In all death penalty cases, this court independently reviews the record to determine the presence or absence of aggravating factors and whether the State proved the aggravating factors beyond a reasonable doubt. *Walton*, 159 Ariz. at 586, 769 P.2d at 1032; *State v. LaGrand*, 153 Ariz. 21, 34, 734 P.2d 563, 576, *cert. denied*, 484 U.S. 872, 108 S.Ct. 207, 98 L.Ed.2d 158 (1987). We discuss each aggravating factor separately.

#### (a) *Pecuniary gain.*

■ Defendant argues that it is unconstitutional to consider pecuniary gain as an aggravating factor because it amounts to double-counting an element of robbery. *See Collins v. Lockhart*, 754 F.2d 258, 264–65 (8th Cir.) *cert. denied*, 474 U.S. 1013, 106 S.Ct. 546, 88 L.Ed.2d 475 (1985). Additionally, he contends that the Arizona Legislature has not "genuinely narrow[ed] the class of persons eligible for the death penalty," as required by *Lowenfield v. Phelps*, 484 U.S. 231, 243, 108 S.Ct. 546, 554, 98 L.Ed.2d 568, 581 (1988) (citations omitted), and that the aggravating factor of pecuniary gain is unconstitutional because the legislature has defined first degree murder in broad terms, leaving the narrowing process for the sentencing stage. Defendant's argument is without merit. In *State v. Carriger* we stated:

> opinions concerning the crime, the defendant or the need for restitution. The court in imposing sentence shall consider the evidence and opinions presented by the victim or the victim's immediate family ... or in the presentence report.

> A.R.S. § 13–702(G) states:
> Nothing in this section shall affect any provision of law which imposes the death penalty....

---

**3.** Victim impact statements cannot be considered during capital sentencing under A.R.S. § 13–703. They can be considered under A.R.S. § 13–702, the general sentencing statute. A.R.S. § 13–702(F) states:

> The victim of any felony or the immediate family of the victim if the victim has died as a result of the conduct of the defendant may appear ... at any aggravation or mitigation proceeding to present evidence and express

[T]he state is not relying on the same facts to prove an element of robbery and the aggravating circumstance. To prove robbery, the state must show a *taking* of property from the victim, *see* A.R.S. § 13–1902(A); to prove pecuniary gain, the state must show the actor's *motivation* was the expectation of pecuniary gain, *see* A.R.S. § 13–703(F)(5). Proving a taking in a robbery does not necessarily prove the motivation for a murder, and the state cannot be said to be using one fact to prove two different items.

143 Ariz. 142, 161, 692 P.2d 991, 1010 (1984), *cert. denied*, 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985) (emphasis in original). The facts necessary to prove a taking of property are not the same facts necessary to prove the motive for murder. Thus, there is no double-counting of an element of robbery when the State proves pecuniary gain as an aggravating factor.

▪ We also reject defendant's argument that our legislature has not narrowed the class of persons eligible for the death penalty. Only those persons convicted of first degree murder as defined in A.R.S. § 13–1105 are eligible for the death penalty. *See* A.R.S. § 13–703(A). Moreover, only when the State has proven *one or more* aggravating factors and there are no mitigating factors sufficient to call for leniency will a person convicted of first degree murder receive the death penalty. *See* A.R.S. § 13–703(E) (emphasis added). The United States Supreme Court has held that this classification "narrows the class of persons eligible for the death penalty to an objective legislative definition." *Lowenfield*, 484 U.S. at 243, 108 S.Ct. at 554, 98 L.Ed.2d at 581. Furthermore, this narrowing process may take place "at either the sentencing phase of the trial or the guilt phase." *Id.* Arizona's death penalty statute narrowly defines the class of death-eligible persons. Therefore, it does not offend the Constitution.

▪ Defendant argues that the State neither proved, nor did the evidence support, a finding of pecuniary gain as an aggravating factor beyond a reasonable doubt. Specifically, he argues that the State did not prove that his "motive" for the murder was the expectation of pecuniary gain. *See Walton*, 159 Ariz. at 588, 769 P.2d at 1034; *Carriger*, 143 Ariz. at 161, 692 P.2d at 1010. Rather, defendant argues that because the robbery was completed at the time of the killings, the killings were not necessary to facilitate the crime or escape. Further, defendant argues that because Lili was shot first in the leg, the killings may have been to eliminate witnesses to the aggravated assault and not the robbery or burglary. However, even if we infer that the murders were to eliminate witnesses to the aggravated assault, this does not preclude the inference that the murders were also for pecuniary gain.

▪ The receipt of something of pecuniary value need only be a cause for the murder, "not merely a result." *State v. Libberton*, 141 Ariz. 132, 139, 685 P.2d 1284, 1291 (1984). We have stated that "the killing and robbery need not occur simultaneously but the purpose of the killing must be to further the defendant's motive of pecuniary gain from the robbery." *Walton*, 159 Ariz. at 588, 769 P.2d at 1034; *State v. Correll*, 148 Ariz. 468, 479, 715 P.2d 721, 732 (1986). The State must prove pecuniary gain beyond a reasonable doubt. *LaGrand*, 153 Ariz. at 35, 734 P.2d at 577.

Before we determine whether pecuniary gain as an aggravating factor exists, we should not ignore *why* defendant was at the scene of the crime in the first place. In *LaGrand*, we stated that "[w]hen a defendant *comes to rob*, the defendant *expects* pecuniary gain and this desire infects *all other conduct* of the defendant." *Id.* (emphasis added). Also, we should consider whether the murders were part of a larger, general scheme, or whether they were unexpected or accidental. *See State v. Hensley*, 142 Ariz. 598, 604, 691 P.2d 689, 695 (1984) (because the victims were shot execution style after the robbery, the murders were neither unexpected nor accidental); *State v. Poland*, 132 Ariz. 269, 645 P.2d 784 (1982) (drowning of Purolator guards after the robbery).

In this case, defendant planned the robbery ahead of time. He armed himself with a gun, went to the house, and entered, knowing the victims were in the house. Defendant also took no precautions to cover his face before he entered the house. After removing items of value from the house, defendant sent codefendant outside, then killed the victims execution style.

Not only did the desire for pecuniary gain permeate defendant's entire conduct, the murders were also a part of the overall scheme of the robbery. The specific purpose of the murders was to facilitate defendant's escape and hinder detection, thereby furthering his pecuniary goal. *See Correll,* 148 Ariz. at 479, 715 P.2d at 732 (after robbing victim's home, defendant took victims to the desert where he shot and killed them); *Hensley,* 142 Ariz. at 604, 691 P.2d at 694 (defendant forced victims to lie on the floor during robbery of a bar, and before leaving shot the victims, execution style, so that no witnesses could identify the robbers). The murders of Lili and Mindy were neither unexpected nor accidental. *LaGrand,* 153 Ariz. at 36, 734 P.2d at 578. "Even if [defendant] shot the victim[s] after the [robbery], the murder[s] [were] part and parcel of the robbery because it resulted in eliminating the only witness[es] to the crime." *State v. Rockwell,* 161 Ariz. 5, 14, 775 P.2d 1069, 1078 (1989). The evidence fully supports the trial court's finding of pecuniary gain as an aggravating factor.

#### (b) *Heinous, Cruel or Depraved.*

The trial court found that the murders were especially heinous, cruel or depraved, A.R.S. § 13–703(F)(6). Defendant argues that this finding was contrary to the evidence and, therefore, erroneous. Because the statute is disjunctive, we need only find one of the factors to uphold the trial court's finding. *Robinson,* 165 Ariz. at 60, 796 P.2d at 862; *Libberton,* 141 Ariz. at 139, 685 P.2d at 1291. Therefore, we discuss the factors separately.

We have held that "a crime is committed in an especially cruel manner when the [defendant] inflicts mental anguish *or* physical abuse *before* the victim's death."

*Walton,* 159 Ariz. at 586, 769 P.2d at 1032 (emphasis added). *See also Correll,* 148 Ariz. at 479–80, 715 P.2d at 732; *State v. McCall,* 139 Ariz. 147, 161, 677 P.2d 920, 934 (1983), *cert. denied,* 467 U.S. 1220, 104 S.Ct. 2670, 81 L.Ed.2d 375 (1984). "Psychological pain may be the equivalent of the most severe physical torture." *Robinson,* 165 Ariz. at 61, 796 P.2d at 863; *Correll,* 148 Ariz. at 480, 715 P.2d at 733. The mental anguish suffered by murder victims is evidenced by their uncertainty regarding their ultimate fate. *Walton,* 159 Ariz. at 586, 769 P.2d at 1032. We have found cruelty where one family member was forced to witness the killing of the other and then wait for her own death. *See, e.g., State v. Bracy,* 145 Ariz. 520, 537, 703 P.2d 464, 481 (1985), *cert. denied,* 474 U.S. 1110, 106 S.Ct. 898, 88 L.Ed.2d 932 (1986) (victims were forced to lie down on a bed and except for the first victim, each endured the shooting of a loved one within their hearing); *McCall,* 139 Ariz. at 161, 677 P.2d at 934 (same); *State v. Gretzler,* 135 Ariz. 42, 53, 659 P.2d 1, 12, *cert. denied,* 461 U.S. 971, 103 S.Ct. 2444, 77 L.Ed.2d 1327 (1983) (wife endured unimaginable terror of hearing her husband shot); *State v. Tison,* 129 Ariz. 526, 543, 633 P.2d 335, 352 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982) (family members witnessed other family members' executions).

Defendant makes numerous arguments that cruelty was neither found nor proven. First, he contends that because neither Lili nor Mindy were conscious at the time of the fatal head wounds, the State could not prove that either suffered. Defendant argues that Lili's head wound could have quickly followed her leg wound, and therefore she would not have suffered any pain. Second, defendant contends that if this court finds mental anguish, it would have to find cruelty in every double homicide, except for those in which the victims are shot simultaneously. Finally, defendant argues that in order to find cruelty we must conclude that defendant intended for the victims to suffer.

Defendant's arguments fail for several reasons. First, after being shot in the leg, Lili would have to have been conscious long enough for defendant to walk over, place a pillow over her head, and fire the fatal shot. Also, because defendant used a .22 caliber bolt action rifle, Lili would have suffered pain for as long as it took defendant to chamber another shell and fire.

Second, defendant's reliance on *State v. Harding*, 137 Ariz. 278, 670 P.2d 383 (1983), *cert. denied*, 465 U.S. 1013, 104 S.Ct. 1017, 79 L.Ed.2d 246 (1984), and *Poland*, 132 Ariz. 269, 645 P.2d 784, to refute the finding of cruelty with respect to the victims' mental anguish is misplaced. In *Harding*, the victims were not related. Though they were found in the same hotel room, there was not evidence beyond a reasonable doubt that they were conscious during their treatment. 137 Ariz. at 294, 670 P.2d at 399. In *Poland*, because "we [knew] nothing of the circumstances under which the [victims] were held hostage," 132 Ariz. at 285, 645 P.2d at 800, we could not find that the victims suffered. The facts in this case are similar to *Bracy, McCall, Gretzler* and *Tison*. Here, a mother and daughter were forced to lie face down while the defendant robbed their house. The mother was shot in the leg and some time later the mother and daughter were both shot and killed execution style. We cannot begin to imagine the mental distress and psychological terror that the mother and daughter must have suffered as they lay next to each other, uncertain as to their fates.

Finally, this court has previously focused on whether a defendant knew or should have known that the victims would suffer not whether he subjectively intended the victims to suffer. *See State v. Adamson*, 136 Ariz. 250, 266, 665 P.2d 972, 988, *cert. denied*, 464 U.S. 865, 104 S.Ct. 204, 78 L.Ed.2d 178 (1983); *Walton*, 159 Ariz. at 587, 769 P.2d at 1033. Defendant held a gun on the victims while he robbed them. The victims were, at the very least, uncertain of their fate. This uncertainty and mental anguish was exacerbated after co-defendant shot Lili in the leg. Defendant knew or should have known that the vic-

tims would suffer. The fact that defendant did not intend for them to suffer is irrelevant. The trial court correctly found that the murders of Lili and Mindy were especially cruel.

■ We now address the factors of heinous or depraved conduct. Whereas the focus for determining cruelty is on the victims, the focus for heinousness and depravity is on the defendant's mental state and attitude as shown by his words and actions. *State v. Jimenez*, 165 Ariz. 444, 455, 799 P.2d 785, 796 (1990); *State v. Fulminante*, 161 Ariz. 237, 255, 778 P.2d 602, 620 (1989), *cert. granted on other grounds*, 494 U.S. 1055, 110 S.Ct. 1522, 108 L.Ed.2d 762 (1990), *judgment affirmed*, —— U.S. ——, 111 S.Ct. 1246, 113 L.Ed.2d 302 (1991); *Poland*, 132 Ariz. at 285, 645 P.2d at 800. Five factors assist us in determining whether a defendant's conduct is heinous or depraved: (1) defendant relished the murder; (2) needless mutilation of the victim; (3) gratuitous violence beyond that necessary to kill; (4) helpless victim; and (5) senseless crime. *Gretzler*, 135 Ariz. at 52–53, 659 P.2d at 11–12.

■ We find that the victims were helpless and the defendant relished the murders. The two women were defenseless and helpless against two armed assailants. Moreover, shooting Lili in the leg made it impossible for her to thwart the ongoing robbery, adding to the victims' helplessness.

In *Walton*, we found that the defendant relished the murder because he said that he had "never seen a man pee in his pants before." 159 Ariz. at 587, 769 P.2d at 1033. This showed "an indifference to the suffering of the victim," and "evidence[d] a sense of pleasure ... in the killing." *Id.* Defendant here showed a similar indifference and pleasure in killing the two victims. The murders occurred on Sunday evening and the very next morning defendant "bragged" to a co-worker that he robbed and killed two women. The co-worker testified that defendant said that "after he shot the older lady that just before he left the house her body rolled

over and blood gushed out of her head, and when he said 'head' he pointed towards his forehead." The coworker further testified that defendant was bragging and that his attitude was that "this was just like something to do on the weekend." Defendant's cellmate testified that defendant was "nonchalant" when he told him that he was in jail because "I just blew two people away." Defendant's indifference and bragging support a finding that he relished the murders of his two victims.

In addition to the *Gretzler* factors, a murder may be especially depraved when a defendant kills to eliminate a victim as a witness. *See, e.g., State v. Marlow,* 163 Ariz. 65, 71, 786 P.2d 395, 401 (1989) (motive for the killing was to eliminate the victim as witness to the robbery); *Correll,* 148 Ariz. at 481, 715 P.2d at 734 ("only reasonably ascertainable motive for the murders was to cold-bloodedly eliminate any and all witnesses to the robbery"); *State v. Gillies,* 142 Ariz. 564, 570, 691 P.2d 655, 661 (1984), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985) (defendant in his *pro se* brief argued that it made sense to kill and "eliminate the only possible witness to the crime of kidnapping, aggravated robbery and sexual assault," and we held this to be heinous and depraved); *State v. Smith* (Roger Lynn), 141 Ariz. 510, 511–12, 687 P.2d 1265, 1266–67 (1984) (defendant killed so that the victim could not testify against him).

Both defendant's coworker and his cellmate testified that defendant killed the two victims because "they had seen his face." From this, we conclude that defendant killed both of the victims to eliminate them as witnesses to the robbery. To end a person's life just so that individual cannot testify against a defendant shows an utter and "complete lack of understanding of the value of a human life." *Correll,* 148 Ariz. at 481, 715 P.2d at 734 (citing *State v. Smith,* 141 Ariz. at 512, 687 P.2d at 1267). Under the facts in this case, we find that the record supports the trial court's finding that the murders were committed in an especially heinous or depraved manner.

(c) *One or more homicides committed during the offense.*

The last aggravating factor found by the trial judge was that "the defendant has been convicted of *one or more other homicides* as defined in A.R.S. § 13–1101, which were committed during the commission of the offense." A.R.S. § 13–703(F)(8). The trial judge found that this factor applied to both of the first degree murder counts. Defendant concedes that A.R.S. § 13–703(F)(8) may apply to *one* of the counts, but not to *both.* Defendant argues that finding this factor as to each count amounts to double-counting. We disagree.

When construing a statute, we look at the plain meaning of the words used in the statute unless their context suggests otherwise. *Bianco v. Patterson,* 159 Ariz. 472, 473, 768 P.2d 204, 205 (Ct. App.1989). *See also O'Malley Lumber Co. v. Riley,* 126 Ariz. 167, 169, 613 P.2d 629, 631 (Ct.App.1980) (when language of statute is plain, there's no need to resort to rules of statutory interpretation). Furthermore, "[p]enal statutes shall be construed according to the fair import of their terms, with a view to effect their object and to promote justice." A.R.S. § 1–211(C). Words and phrases contained in a statute are to be construed according to "the common and approved use of the language." A.R.S. § 13–703(F)(8) provides that an aggravating factor exists when "[t]he defendant has been convicted of one or more other homicides, as defined in A.R.S. § 13–1101, which were committed during the commission of the offense." A.R.S. § 1–213. The plain meaning of the statute reads that if a defendant has been convicted of *one or more other* homicides, and this conviction arose out of the commission of the offense, the homicide conviction is an aggravating factor that the State could allege and the trial judge may find.

In this case, defendant was convicted of count one, the murder of Lili, and during the commission of this offense defendant killed Mindy, for which he was also convicted. Likewise, for count two, defendant was convicted of the murder of Mindy, and during the commission of this offense

defendant killed Lili, for which he was also convicted. The murder convictions were completely separate from each other and, therefore, A.R.S. § 13–703(F)(8) applies to *each and every* first degree murder conviction. Thus, the trial court did not err in applying this factor to each of the first degree murder convictions.

No Arizona case discusses whether the application of this aggravating factor to both of two murders amounts to double jeopardy.[4] However, other jurisdictions that have similar provisions, *see, e.g.,* Md. Ann.Code art. 27, § 413(d)(9) ("[t]he defendant committed more than one offense of murder in the first degree arising out of the same incident"); Mo.Ann.Stat. §§ 565.-035.3 and 565.032.2(2) (1990 Cumm.Supp.) ("murder in the first degree offense … was committed while the offender was engaged in the commission or attempted commission of another unlawful homicide"), apply the aggravating factor to *each and every* first degree murder conviction.

In *Evans v. State,* 304 Md. 487, 538, 499 A.2d 1261, 1288 (1985), *cert. denied,* 478 U.S. 1010, 106 S.Ct. 3310, 92 L.Ed.2d 722 (1986), the Maryland Supreme Court was asked to decide whether the jury could find Md.Ann.Code art. 27, § 413(d)(9) as an aggravating factor to each and every charge of first degree murder when more than one person was murdered. The defendant was charged with two separate counts of first degree murder and the State alleged as an aggravating factor to each count that "the defendant committed more than one offense of murder in the first degree arising out of the same incident." *Id.* The defendant argued that "it was error to allow the jury to find … this aggravating circumstance in each instance, because the Legislature intended that only one death sentence could be imposed where more than one person was murdered." *Id.* The court stated:

Each murder was clearly a separate offense. The readily apparent intent of the Legislature in the enactment of the capital punishment statute was to permit consideration of the death penalty under the egregious circumstances of multiple first degree murders. There is no indication of an intent to allow the imposition … for one but not all of the offenses. *Id.; cf. State v. Murray,* 744 S.W.2d 762, 775 (Mo.), *cert. denied,* 488 U.S. 871, 109 S.Ct. 181, 102 L.Ed.2d 150 (1988) ("[e]vidence that Jackson and Stewart were both taken into the kitchen by the defendant and his accomplices shortly before their lifeless bodies were found there leaves no doubt that *each* of the murders was committed while the killer was engaged in the commission of another unlawful homicide") (emphasis added). *But see Godfrey v. State,* 248 Ga. 616, 624, 284 S.E.2d 422, 430 (1981), *cert. denied,* 456 U.S. 919, 102 S.Ct. 1778, 72 L.Ed.2d 180 (1982) (where each murder conviction was aggravated by the other murder conviction, the court found them "mutually supporting", and "arbitrarily" eliminated one of the death sentences).

We believe our legislature, like the Maryland legislature, enacted A.R.S. § 13–107(F)(8) to allow "consideration of the death penalty under the egregious circumstances of *multiple first degree murders.*" *Evans,* 304 Md. at 538, 499 A.2d at 1288 (emphasis added).

### 4. Mitigating Circumstances

 We must independently review the record and determine whether the mitigating factors outweigh the aggravating factors, and therefore call for leniency. *State v. Stevens,* 158 Ariz. 595, 598, 764 P.2d 724, 727 (1988); *Nash,* 143 Ariz. at 404, 694 P.2d at 234. Defendant must prove mitigating factors by a preponderance of the evidence. *State v. Fierro,* 166 Ariz. at 551, 804 P.2d at 84. When sentencing a defendant for first degree mur-

---

**4.** In *State v. Lavers,* 168 Ariz. 376, 814 P.2d 333 (1991), the trial court found A.R.S. § 13–703(F)(8) applicable to both murder convictions. *Lavers* was concerned with whether this factor could be found when there was a 3 hour time span between the two killings and when the bodies were found in separate places. The defendant argued that the murders were not "committed during the commission" of each other. The defendant in *Lavers* did not raise the issue of "double counting," and it was not discussed.

der, the trial court must consider, in addition to the factors set out in A.R.S. § 13–703(G), any aspect of the defendant's character or record and any circumstance of the offense relevant to determining whether a sentence less severe than death is appropriate. *Lockett v. Ohio*, 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Fierro*, 166 Ariz. at 551, 804 P.2d at 84.

#### (a) *Age*

■ Defendant presented one statutory mitigating factor, A.R.S. § 13–703(G)(5), age, and numerous non-statutory mitigating factors. The trial court concluded that defendant's age, 19 at the time of the murders, was the only mitigating factor. We agree with the trial court.

#### (b) *Defendant's low I.Q.*

Defendant argues that because he has an I.Q. of 72, he "is not only immature and learning disabled, but is genuinely mentally retarded." He also argues that "the effect of the retardation on … his ability to realize what he was doing has to be considered as a mitigating factor." We do not agree.

■ Defendant's own expert testified that defendant was borderline functional, and *not* mentally retarded. Moreover, the expert testified that a person with an I.Q. of 72 is fully capable of functioning in society and that defendant was capable of making judgments with limited impairment. Defendant's former work manager testified that defendant was a responsible person, that he had been picked for promotion because he had shown an ability to supervise other people and that he handled problems without any outbreak of irrational behavior. As we stated in *State v. Ceja*, 126 Ariz. 35, 40, 612 P.2d 491, 496 (1980), "[t]his is not the slow, dull, [retarded] individual with [a] significantly impaired mental capacity which counsel [seeks] to depict," but rather, an individual who planned two weeks in advance to rob the victims and carried out this plan.

We cannot accept defendant's argument that, because he was inept at committing this crime and lacked criminal sophistica-

tion, his sentence should be reduced. We have never held that, as part of the sentencing process, the court must look at the crime itself to determine if it was carried out with criminal sophistication. We agree with the trial court that, under the facts of this case, defendant's I.Q. of 72, which places him in a borderline functioning category, was neither significant enough to qualify as a mitigating factor, nor sufficiently substantial to call for leniency. *See State v. Smith* (Robert), 138 Ariz. 79, 86, 673 P.2d 17, 24 (1983), *cert. denied*, 465 U.S. 1074, 104 S.Ct. 1429, 79 L.Ed.2d 753 (1984) (I.Q. of 71, troubled home life as a youth, lack of prior record of serious crime, remorse and learning difficulties in school were not sufficiently substantial to call for leniency); *State v. Bishop*, 127 Ariz. 531, 535, 622 P.2d 478, 482 (1980) (below average intelligence, fact that defendant completed only the sixth grade and lack of prior criminal record were not sufficiently substantial to call for leniency).

This case can be distinguished from *State v. Jimenez*, 165 Ariz. 444, 799 P.2d 785 (1990), where low I.Q. was at issue as a mitigating factor. The court in *Jimenez* focused on two mitigating factors: (1) the defendant's age (17 years and two months at the time of the murder); and (2) his I.Q. and mental state *at the time of the murder*. 165 Ariz. at 456–60, 799 P.2d at 797–801. Although the defendants in both *Jimenez* and the instant case registered comparable I.Q.s and ages, the defendant in *Jimenez* offered substantial testimony to establish that he also suffered from hallucinations and delusions which compelled him to commit the murder. *Id.* The defendant in the present case limited expert testimony about his mental condition to his I.Q. The defendant offered no testimony to establish he suffered from hallucinations or delusions at the time he committed the murder.

#### (c) *Codefendant received a life sentence*

■ Defendant's last argument is that codefendant's life sentence is a mitigating factor in defendant's favor. Although a codefendant's life sentence could be a mitigating factor, *State v. Watson*, 129 Ariz.

60, 64, 628 P.2d 943, 947 (1981), we do not find it to be one in this case. At codefendant's sentencing, the court found that codefendant's age, 16 at the time of the offense, and the fact that defendant actually executed the women called for leniency. *See State v. Gerlaugh,* 135 Ariz. 89, 91, 659 P.2d 642, 644 (1983) (codefendant was 18, a first offender and was less active in the commission of the crimes).

 As noted above, therefore, defendant's age of 19 is the only mitigating factor. Like the trial court, we also conclude that it is not sufficient to outweigh the three aggravating factors.

In *State v. Valencia,* 132 Ariz. 248, 645 P.2d 239 (1982), we recognized that a defendant's young age is "a substantial and relevant factor" that should be given "great weight." 132 Ariz. at 250, 645 P.2d at 241. But we also recognized that age, in and of itself, will not reduce every death penalty to a life sentence. *Id.* When addressing the issue of young age, we look at defendant's level of maturity, judgment and involvement in the crime. *Walton,* 159 Ariz. at 589, 769 P.2d at 1035; *State v. Gerlaugh,* 144 Ariz. 449, 461, 698 P.2d 694, 706 (1985); *Gillies,* 142 Ariz. at 571, 691 P.2d at 662. In *Gillies,* we found that the extent and duration of defendant's participation in the crime minimized the impact of his youth as a mitigating factor. 142 Ariz. at 571, 691 P.2d at 662. Further, in *Walton* we noted that "[c]arrying out a plan over a significant period of time reflects [a] delay of gratification, which in turn evidences relative maturity; impulsive acts reflect relative youth and immaturity." 159 Ariz. at 589, 769 P.2d at 1035.

Defendant's participation in this crime was substantial and his actions were deliberate. Not only did he plan the robbery two weeks before hand, he alone executed the two women. The trial court found that "defendant's actions in the crime and the evidence of brutality far outweighed his chronological, emotional and mental age." Therefore, defendant's age is insufficient to call for leniency when weighed against the three aggravating factors.

The trial court found that as to both count one and two, the aggravating factors found in A.R.S. §§ 13–703(F)(5), (6) and (8) applied, as did the mitigating factor found in A.R.S. § 13–703(G)(5). We agree. We have also independently reviewed the record for further evidence of mitigation beyond the issues presented by defendant and have found none.

Defendant argues that the trial court failed to consider and find the other mitigating factors he proffered. We disagree. The trial court stated that it "[had] considered *all other* mitigating factors, those presented at the ... hearing, and also those ... submitted ... in the sentencing memorandum and *any other* matters of record." (emphasis added). We find no error.

5. Did the State fail to prove that defendant committed the murders?

Defendant argues that because the jury was not asked to decide whether *he actually killed* the two women, this court may not decide the issue. The underlying premise of defendant's argument is that because the jury was instructed on both premeditated and felony murder theories and returned a general verdict of guilty of first degree murder, the jury did not establish that defendant killed, attempted to kill or intended to kill. *Enmund v. Florida,* 458 U.S. 782, 102 S.Ct. 3368, 73 L.Ed.2d 1140 (1982). We addressed this same issue in *State v. McDaniel,* 136 Ariz. 188, 199, 665 P.2d 70, 81 (1983), and agreed that when a jury is instructed on both felony and premeditated murder and returns a general verdict of guilty of first degree murder, the *Enmund* requirements are not satisfied. This court stated that, "[i]n order to comply with *Enmund,* ... the trial judge must determine beyond a reasonable doubt prior to imposing a sentence of death that the defendant killed, attempted to kill or intended to kill." *McDaniel,* 136 Ariz. at 199, 665 P.2d at 81.

 The trial judge in this case made the following findings before imposing sentence:

As to Counts One and Two, Count One being the first degree murder of Lili Champagne, and Count Two being the first degree murder of Mindy Peters, the

court finds *beyond a reasonable doubt* that not only did the defendant have *major personal involvement* in the felony, and not only did he show a *reckless indifference to human life*, but, Mr. Greenway, the court finds that you *fired the fatal shots into each of the victims*. (Emphasis added). The trial judge's findings satisfy not only the *Enmund* requirements, but also comply with *Tison v. Arizona*, 481 U.S. 137, 107 S.Ct. 1676, 95 L.Ed.2d 127 (1987). In *Tison*, the United States Supreme Court held that *"major participation* in the felony committed, combined with reckless indifference to human life, is sufficient to satisfy the *Enmund* culpability requirement." 481 U.S. at 158, 107 S.Ct. at 1688, 95 L.Ed.2d at 144–145 (footnote omitted) (emphasis added).

Defendant argues that an *Enmund-Tison* finding would violate his right to a jury trial under the sixth amendment. We do not agree. In *Cabana v. Bullock*, the Supreme Court held that the *Enmund* rule is a "substantive limitation on sentencing, and like other such limits it need not be enforced by the jury." 474 U.S. 376, 386, 106 S.Ct. 689, 697, 88 L.Ed.2d 704, 716 (1986). Thus, the Constitution is not offended when the *Enmund* finding is made at *any point* in the capital sentencing process. *Id.* The trial judge's *Enmund* findings did not violate defendant's sixth amendment right to a jury trial.

■ Finally, defendant argues that the State did not prove that he committed the murders or that he fit within the *Tison* rationale. Again, we do not agree. Defendant admitted to his coworker, his cellmate and his sister that he killed the two women. Moreover, defendant planned and prepared for two weeks to rob the victims. After entering the house and robbing the victims, he shot and killed both of the women execution style. The record supports the trial court's finding that defendant "fired the fatal shots", was a "major participa[nt] in the felony committed" and showed "reckless indifference" to the lives of Lili and Mindy.

## V. PROPORTIONALITY REVIEW

■ Defendant contends that the trial court should have performed a proportionality review, thereby considering similarly situated defendants who have received life sentences. This court, and not the trial court, reviews every death penalty case in Arizona. *See* A.R.S. § 13–4031. The trial court's consideration of other similarly situated defendants is inapposite to *this* defendant's "character or record", and does not show any of the circumstances surrounding *this* defendant's "offense" that would call for a sentence less than death. Therefore, only this court will conduct a proportionality review, considering both the defendant and the crime. *State v. Richmond*, 114 Ariz. 186, 196, 560 P.2d 41, 57 (1976), *cert. denied*, 433 U.S. 915, 97 S.Ct. 2988, 53 L.Ed.2d 1101 (1977).

We conduct a proportionality review to determine whether "the sentences of death are excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant." *Walton*, 159 Ariz. at 589, 769 P.2d at 1035 (quoting *State v. Wallace*, 151 Ariz. 362 at 370, 728 P.2d 232 at 240 (1986)); *Richmond*, 114 Ariz. at 196, 560 P.2d at 51.

■ In our proportionality review, we have considered cases in which the trial judge sentenced the defendant to death based upon a finding of one or more of the aggravating factors present in this case, and no mitigating factors sufficiently substantial to call for leniency. *See State v. Amaya-Ruiz*, 166 Ariz. 152, 800 P.2d 1260 (1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 2044, 114 L.Ed.2d 129 (1991) (despite defendant's lack of prior conviction, limited intelligence and formal education, age at time of offense, remorse at time of arrest and character evidence indicating no previous history of violence, death penalty affirmed upon finding that killing was committed in especially heinous, cruel or depraved manner); *State v. Robinson*, 165 Ariz. 51, 796 P.2d 853 (1990), *cert. denied*, —— U.S. ——, 111 S.Ct. 1025, 112 L.Ed.2d 1107 (1991), *cert. denied, sub nom. Washington v. Arizona*, —— U.S. ——, 111 S.Ct. 1091, 112 L.Ed.2d 1195 (1991) (finding concerning defendant's familial activities prior to the

homicide was not sufficient to outweigh finding that the killing was done for pecuniary gain and in an especially heinous, cruel or depraved manner); *Walton,* 159 Ariz. 571, 769 P.2d 1017 (despite defendant's relative youth (age 20), death penalty affirmed upon finding that killing was done for pecuniary gain and in an especially heinous, cruel or depraved manner); *Correll,* 148 Ariz. 468, 715 P.2d 721 (despite defendant's youth (age 24) and upbringing, death penalty affirmed upon finding that killings were done for pecuniary gain and in an especially heinous, cruel or depraved manner, and that the defendant had committed previous violent felonies); *State v. Tison (Ricky),* 129 Ariz. 526, 633 P.2d 335 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982) (despite young age, minimal prior criminal activity of defendant, and convictions based on the felony murder rule, death penalty affirmed upon finding that the killings were done for pecuniary gain and in an especially cruel, heinous or depraved manner); *State v. Tison (Raymond),* 129 Ariz. 546, 633 P.2d 355 (1981), *cert. denied,* 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147 (1982) (same); *State v. Bishop,* 127 Ariz. 531, 622 P.2d 478 (1980) (despite subnormal intelligence, lack of prior criminal record and some cooperation with the police, death penalty affirmed upon finding that the killing was done in an especially heinous, cruel or depraved manner); *State v. Clark,* 126 Ariz. 428, 616 P.2d 888, *cert. denied,* 449 U.S. 1067, 101 S.Ct. 796, 66 L.Ed.2d 612 (1980) (despite defendant's relative youth (age 20), emotional problems, poor childhood home life and lack of adult criminal record, death penalty affirmed upon finding that the killing was done for pecuniary gain and in an especially heinous, cruel or depraved manner).

In our review, we have also· considered cases in which the defendant robbed and murdered unarmed victims. *See, e.g., LaGrand,* 153 Ariz. 21, 734 P.2d 563 (defendants' ages (18 and 19), their prior home life and their remorse did not outweigh the aggravating factors of a prior felony conviction involving the use or threat of violence on another, pecuniary gain and an especially heinous, cruel or depraved manner of killing); *Nash,* 143 Ariz. 392, 694 P.2d 222 (no mitigating factors found to offset aggravating factors of prior conviction of a felony involving the use or threat of violence on another, knowingly creating a grave risk of death to another and pecuniary gain); *Hensley,* 142 Ariz. 598, 691 P.2d 689 (fact that defendant obtained his graduate equivalency diploma while in prison did not outweigh the aggravating factor of pecuniary gain); *Gretzler,* 135 Ariz. 42, 659 P.2d 1 (defendant's impaired mental capacity to appreciate the wrongfulness of his conduct, difficult family history and favorable adjustment to prison did not outweigh the aggravating factors of another prior conviction punishable by life or death, prior conviction of a felony involving use or threat of violence on another, pecuniary gain and especially heinous, cruel or depraved manner of killing).

We also have considered cases in which the death penalty was reduced to life imprisonment. *See, e.g., Jimenez,* 165 Ariz. 444, 799 P.2d 785 (defendant's severe mental illness, his youth (age 17) and his low I.Q. outweighed finding that murder of 5–year–old victim was heinous and depraved); *Rockwell,* 161 Ariz. 5, 775 P.2d 1069 (defendant's character and background, his age at the time of the murder (age 21) and the unique circumstances of his conviction outweighed finding that the killing was done for pecuniary gain); *State v. Graham,* 135 Ariz. 209, 660 P.2d 460 (1983) (defendant's diminished capacity to appreciate the wrongfulness of his conduct, lack of other adult convictions and no tendency toward violent crimes outweighed finding that killing was done for pecuniary gain); *Valencia,* 132 Ariz. 248, 645 P.2d 239 (youthfulness of defendant (age 16), was substantial mitigating factor); *State v. Watson,* 129 Ariz. 60, 628 P.2d 943 (1981) (young age of defendant (age 21), fact that defendant had been a model prisoner and was furthering his education in prison, fact that the killing had occurred during a shootout in which the victim may have fired first and fact that codefendant received a life sentence, outweighed findings of prior conviction punishable by life imprisonment and involving the use or threat of force).

Based upon our review of these decisions, we find that the imposition of the death penalty in this case is proportional to the sentences imposed in similar cases.

## VI. DISPOSITION

We have searched the record for fundamental error as required by A.R.S. § 13-4035, *Anders v. California*, 386 U.S. 738, 87 S.Ct. 1396, 18 L.Ed.2d 493 (1967) and *State v. Yslas*, 139 Ariz. 60, 63, 676 P.2d 1118, 1121 (1984), and have found none. Defendant's convictions and death sentences are affirmed.

GORDON, C.J., concurs.

MOELLER, Justice, specially concurring in part.

I agree that defendant's convictions and sentences should be affirmed. I do not, however, join in the proportionality analysis conducted by the majority. I continue to believe that proportionality reviews by this court are inappropriate for the reasons set forth in the concurring opinions in *State v. White*, 168 Ariz. 500, 815 P.2d 869 (1991).

In rejecting defendant's claim that the *trial court* should have conducted a proportionality review, the majority correctly holds that "[t]he trial court's consideration of other similarly situated defendants is irrelevant to *this* defendant's 'character or record,' and does not show any of the circumstances surrounding *this* defendant's 'offense' that would call for a sentence less than death." (Emphasis in original.) At 171, 823 P.2d at 38. The same considerations of irrelevancy that led the majority to reject proportionality reviews by trial courts apply with at least equal force to proportionality reviews by this court.

The Arizona death penalty statutes, carefully crafted to meet constitutional requirements, do not envision judicially-created proportionality reviews. The record in this case demonstrates the "slippery slope" toward which the majority inches by persisting in conducting such reviews. Defendant sought to introduce evidence in the trial court concerning several other murder cases which he contended were factually similar to his case and which resulted in life sentences. Defendant also requested the trial court to examine *all* first degree murder cases in Arizona since 1980 when conducting the proportionality review.

If meaningful proportionality reviews are to be conducted with the parties' participation, it seems obvious that the courts in such cases will soon be litigating not one murder case, but scores or, indeed, hundreds of murder cases in every potential capital case. One may also reasonably predict that when a defendant under a death sentence at last exhausts his other remedies and nears an execution date, he will seek an updated proportionality review to include capital cases which have accrued during the years since his own death sentence was imposed. The majority's insistence on proportionality reviews, if carried to its logical conclusion, will inevitably result in all death penalty cases becoming so bogged down that it will be virtually impossible to conclude any of them. Our experience with seemingly interminable death penalty litigation should cause us to refrain from gratuitously adding yet another obstacle to finality.

I realize that, to date, the court has conducted its proportionality reviews without evidentiary input from the parties, a seeming anomaly not yet addressed by this court or, so far as I know, by any other court. Because proportionality reviews are unnecessary in the first instance, arguably the majority may continue to exclude the parties from such reviews and conduct them as it sees fit. In my view, however, prudence suggests that we abandon the practice.

CORCORAN, Justice, specially concurring in part.

I join in Justice Moeller's special concurrence.

FELDMAN, Vice Chief Justice, specially concurring.

I agree with the result and with the reasoning of the court. I concur specially only because I depart from that portion of

the court's aggravation/mitigation analysis dealing with the question of whether the killing was especially depraved under A.R.S. § 13–703(F)(6). *See* at 166–167, 823 P.2d at 33–34. The court correctly concludes that the murder was especially depraved based on the *Gretzler* factors. The court goes on to say, however, that the murder was also especially depraved because it was committed to eliminate the victims as witnesses. *Id.* at 166–167, 823 P.2d at 33–34.

Section 13–703(F)(6) is worded in the disjunctive, so the court need find only that the killing was especially cruel, heinous, *or* depraved to establish this aggravating circumstance. *State v. Amaya–Ruiz*, 166 Ariz. 152, 177, 800 P.2d 1260, 1285 (1990). Consequently, because the court finds the killing in this case to be unquestionably cruel and depraved on other grounds, the remainder of the depravity analysis, dealing with the elimination of witnesses, is superfluous.

More important, the analysis does not address the threshold question of whether § 13–703 permits this court to find that a killing is especially depraved for the independent reason that the motive for the killing was to eliminate witnesses. To the extent that this is implied, I disagree.

No doubt, killing to eliminate witnesses may be *a factor* in finding depravity, but the legislature has characterized only one motive—pecuniary gain—as a *per se* aggravating circumstance. *See* A.R.S. § 13–703(F)(5); *see also State v. Harding*, 141 Ariz. 492, 500, 687 P.2d 1247, 1255 (1984) (rejecting argument that sentencing statute was arbitrary and capricious because it included motive of pecuniary gain as an aggravating circumstance but not motive of eliminating witness; "inclusion of a killing motivated by pecuniary gain on the list, as opposed to other factors, is a proper determination for the legislature"). By failing to enumerate any other motive, the legislature has implied that other reasons for killing are not *per se* aggravating circumstances.

This court has never faced or decided this issue of whether killing to eliminate a witness is, *per se*, an aggravating circumstance. In *State v. Marlow*, 163 Ariz. 65, 71, 786 P.2d 395, 401 (1989), we stated that "[w]e have previously concluded that a killing motivated by a desire to eliminate the victim as a witness is heinous or depraved," and cited *Correll, Gillies*, and *Smith* as support for this conclusion. These cases do not stand for such a proposition. None of them held that killing to eliminate a witness was, without more, an aggravating circumstance.[5] The issue was neither briefed nor argued by the parties in this case, and I would make it clear that we do not address it at this time. Because the court does not unambiguously state that the basis for its depravity finding is the presence of the *Gretzler* factors *plus* the motive to eliminate witnesses, I write to make it clear that the court has never held that this motive, alone, is a sufficient basis for such a finding.

---

5. *See State v. Correll*, 148 Ariz. 468, 481, 715 P.2d 721, 734 (1986) (depravity was "indicated" by several factors including fact that murder was committed to prevent victim from testifying about contemporaneous felony); *State v. Gillies*, 142 Ariz. 564, 570, 691 P.2d 655, 661 (1984) (as one of two factors, "elimination of witnesses, as a motive for murder ... illustrates heinousness and depravity"), *cert. denied*, 470 U.S. 1059, 105

S.Ct. 1775, 84 L.Ed.2d 834 (1985); *State v. Smith*, 141 Ariz. 510, 511–12, 687 P.2d 1265, 1266–67 (1984) (court stated that killing to eliminate witness "tends to prove depravity," but concluded that trial court had not found underlying "facts to be true beyond a reasonable doubt").

* Zlaket, J., did not participate in the determination of this matter.