775 P.2d 1069

**STATE of Arizona, Appellee,**

v.

**Ronald Edwin ROCKWELL, Appellant.**

**No. CR–86–0011–AP/PC.**

Supreme Court of Arizona, En Banc.

June 8, 1989.

Robert K. Corbin, Atty. Gen. by Jessica Gifford Funkhouser and Greg A. McCarthy, Asst. Attys. Gen., Phoenix, for appellee.

Kenneth D. Everett, Mohave County Public Defender by Michael J. Burke, Deputy Mohave County Public Defender, Kingman, for appellant.

## OPINION

MOELLER, Justice.

### JURISDICTION

A jury convicted the defendant, Ronald Edwin Rockwell, of first degree murder and robbery.[1] The court sentenced him to death on the murder charge and to five years imprisonment on the robbery charge.

---

1. Because defendant committed the crimes on March 25, 1978, this case is governed by what has become known as the "old code."

He appeals. He separately asks us to review the trial court's denial of his petition for post-conviction relief. We consolidated the two proceedings. We have jurisdiction pursuant to article 6, § 5(3) of the Arizona Constitution and A.R.S. § 13–4031.

## ISSUES PRESENTED

1. Whether the trial court erred by permitting the state to rebut defendant's "false boasting" defense by inquiring about specific instances in which defendant boasted truthfully about crimes he in fact committed.

2. Whether the trial court erred by admitting evidence of other bad acts.

3. Whether the evidence in the record is sufficient to support the convictions.

4. Whether defendant received ineffective assistance of counsel at trial.

5. Whether the trial court erred by failing to state in the special verdict that it found the existence of the aggravating circumstances beyond a reasonable doubt.

6. Whether the trial court erred by finding two prior convictions as aggravating circumstances justifying the death penalty.

7. Whether the death penalty is warranted in this case.

## FACTS

On March 25, 1978, at approximately 4:00 a.m., a trucker discovered a shooting victim at the Bingo Truck Stop, located approximately five miles west of Kingman. The victim was Lynn Anderson, an employee at the truck stop who was working the 10:00 p.m. to 6:00 a.m. shift. The trucker found Anderson lying on his side with his knees slightly bent in a doorway leading to the men's restroom. Anderson died at the hospital without regaining consciousness. The coroner determined that Anderson was shot in the back of his head.

Deputy Lee Hays of the Mohave County Sheriff's Office arrived at the truck stop at

5:30 a.m. to investigate the shooting. The cash register was empty except for two large bills under the money tray. Approximately $85 to $100 was taken from the tray. No blood stains were found anywhere except in the immediate vicinity of the body. No weapons were found, nor any evidence of a struggle. From the position of the body, Hays determined that Anderson was shot while on his knees and had been left where he fell. The crime scene was thoroughly dusted for fingerprints but none of the prints correlated with any suspect. The murder and robbery were the subject of news stories in the local media.

Approximately one year after the murder, defendant separately told his then-girlfriend, Bobbi Wonzy; his sister, Tanya Wainscott; his brother, Lewis Rockwell; and Lewis's wife, Darci, that he and one or two others robbed a gas station in Kingman and shot the attendant. He included in his stories facts that had not been reported by the media, including the fact that he made the victim kneel in the restroom and shot him there. However, these witnesses testified that they did not believe defendant's admissions because he often told them stories of criminal exploits to create what he perceived to be a macho image.[2]

Defendant was indicted for the murder and robbery more than seven-and-a-half years after the crimes were committed. The only evidence connecting defendant to the crimes were the four confessions to his friends and relatives.

The jury convicted defendant on both the robbery and first degree murder charges. After a sentencing hearing, the trial judge found the existence of three statutory aggravating circumstances under A.R.S. § 13–703(F). He found the defendant had previously been convicted of two felonies involving the use or threat of violence, namely, a Tucson robbery and a Kingman

---

2. Defendant was involved in a tragic motorcycle accident at the age of seventeen. The result was that defendant's leg was amputated and he suffered serious head injuries. There are repeated references in the record to defendant's difficulty in dealing with the loss of his leg and his need to compensate by projecting a macho image.

assault.[3] The third statutory aggravating circumstance found by the trial court was that defendant committed the murder for pecuniary value under A.R.S. § 13–703(F)(5). The trial court considered, but rejected, defendant's age (twenty-one at the time of the offense) as mitigation sufficient to outweigh imposition of the death penalty. Finding no other mitigation, the trial court sentenced defendant to death for the murder and to five years for the robbery conviction. Defendant appealed.

Defendant also filed a Rule 32 petition for post-conviction relief with the trial court, which alleged ineffective assistance of counsel. The trial court denied the petition without a hearing and denied a motion for reconsideration. The defendant petitions this court to review those rulings. We consolidated the two proceedings.

## DISCUSSION

### Defendant's Confessions to Other Crimes He Committed

Before trial, the state accurately predicted that defendant would contend that he had falsely confessed. The state originally sought a pre-trial evidentiary ruling that would permit it to introduce testimony concerning defendant's confessions to other crimes and his convictions for those other crimes. These confessions related to the assault of a young child in Kingman and the robbery of a Tucson donut shop. The state initially argued that these items were admissible under Rule 404(b) of the Arizona Rules of Evidence. Rule 404(b) permits evidence of prior acts to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." However, the state ultimately conceded that the evidence was not admissible for any purpose listed in Rule 404(b).

The state refined its argument at the pre-trial hearing. The state anticipated, and defense counsel acknowledged, that de-

fendant would argue at trial that his confessions in this case were suspect because he routinely boasted untruthfully about criminal activity. The state argued that it should be permitted to rebut this defense by showing that, although he may have falsely boasted about some criminal activity in the past, in the two instances referred to he had boasted truthfully and had been convicted of the crimes that were the subjects of the boasts.

Defense counsel objected. The court, however, ruled that it would allow evidence of the convictions *if* it developed that the witnesses mentioned them either in explaining their opinion of the defendant's truthfulness or in the course of explaining defendant's confession to the murder.

The defense did not want documentary evidence of the convictions in evidence. As an alternative, the defense offered to stipulate that the defendant had in fact committed the other two acts, without putting the convictions in evidence. The court accepted the stipulation. The jury first learned of the other two acts from the defense counsel's opening statement, and the following stipulation was read to the jury at the close of the state's case:

> Ladies and gentlemen, the parties have stipulated that independent conclusive proof exists that shows that the defendant did in fact assault a three-year-old boy in Kingman and did in fact rob the Bosa Donut Shop in Tucson and assault the clerk.

Reporter's Transcript, November 6, 1985, at 221, lines 19–23.

At the conclusion of the case, the court also gave a limiting instruction to the effect that the evidence relating to the other acts was not received and should not be considered for the purpose of showing the defendant had a disposition to commit crimes.

■ On appeal, defendant argues that the trial court erred by permitting the jury

---

**3.** These "prior" convictions were, in fact, for crimes that occurred after the murder in this case. *State v. Jordan,* 126 Ariz. 283, 614 P.2d 825 (1980), permits the use of such "prior" con-

victions under A.R.S. § 13–703. However, as we explain, *infra,* the trial court inappropriately considered these convictions.

to hear about the other two crimes. In essence, he argues that the trial court should not have accepted the stipulation. Usually, a stipulation waives defendant's right to object to the evidence on appeal. *See Wolf Corp. v. Louis,* 11 Ariz.App. 352, 355, 464 P.2d 672, 675 (1970). However, because defense counsel offered the stipulation as an alternative only after an adverse ruling on the admissibility of the other crimes, we believe he fairly and properly preserved the issue for appeal and we will address the issue on the merits. *See Bell v. State,* 143 Ariz. 305, 310, 693 P.2d 960, 965 (App.1984).

■ Defendant sought to establish as a defense his character trait of untruthfulness; namely, that it was his nature to fabricate stories of criminal exploits. Rule 404 of the Arizona Rules of Evidence controls the circumstances in which character evidence is admissible; Rule 405 defines the manner in which admissible character evidence may be proved. Although Rule 404(a) instructs generally that "[e]vidence of a person's character or a trait of his character is not admissible for the purpose of proving that he acted in conformity therewith on a particular occasion," Rule 404(a)(1) allows an accused in a criminal case to offer evidence of a pertinent trait of his character. If the accused does so, the prosecution may rebut it. Therefore, under this rule, defendant properly introduced character evidence supporting his fabrication defense, and the state properly endeavored to rebut that character evidence.

The critical issue and the heart of defendant's complaint on appeal is the *method* by which the state rebutted defendant's character defense. Rule 405 governs the methods of proof. It provides:

(a) **Reputation or Opinion.** In all cases in which evidence of character or a trait of character of a person is admissible, proof may be made by testimony as to reputation or by testimony in the form of an opinion. On cross-examination, inquiry is allowable into relevant specific instances of conduct.

(b) **Specific Instances of Conduct.** In cases in which character or a trait of character of a person is an essential element of a charge, claim, or defense, proof may also be made of specific instances of his conduct.

Under Rule 405(a) the defendant could prove his character either by reputation or opinion testimony. The defendant chose to offer opinion testimony. On cross-examination, he elicited the opinions of the witnesses the state had called to testify to his confessions to the charges in this case, all of whom were relatives or friends of the defendant. Under Rule 405(a), the state was entitled to explore the validity of that opinion testimony by asking those witnesses about relevant specific instances of conduct, i.e., the two known truthful confessions.

■ Rule 405(a) speaks of testing the opinion testimony by inquiry into relevant specific instances of conduct on "cross-examination." In this case, the inquiry was in fact made on redirect examination, because the defendant had offered the opinion evidence concerning his character trait on cross-examination. For purposes of the opinion testimony, the state's witnesses were the defendant's witnesses. The state's examination concerning specific instances of conduct on redirect examination was, therefore, entirely consistent with the intent of the rule. *See* Weinstein's Evidence, § 404[05] at 404–45 (citing *United States v. Grady,* 665 F.2d 831 (8th Cir. 1981), *aff'd,* 715 F.2d 402 (8th Cir.1983) (proper for government to ask on redirect examination about arrests after prosecution witness testified on cross-examination about defendant's character)).

Cross-examination of a character witness about specific instances of conduct is permitted under Rule 405(a) so that the jury can evaluate whether the witness's opinion concerning the character trait is well-founded. The stipulation that the trial judge read to the jury merely reflected an agreement between the parties, designed to ensure that the jury placed the evidence in proper perspective. Everything in the stipulation was admissible to rebut defendant's

character evidence. We, therefore, conclude that, under the particular circumstances of this case, Rule 405(a) permitted the state to ask defendant's character witnesses whether defendant had boasted of the two other crimes and whether they knew if he in fact had committed those crimes.[4]

The defendant argues alternatively that, even if the fact of the Tucson robbery was admissible, the details of it were not. No such objection was made at trial. Having failed to object, the issue is waived on appeal. *See State v. Brown*, 125 Ariz. 160, 162, 608 P.2d 299, 301 (1980). Parenthetically, however, we note that defendant himself offered evidence of at least one other specific instance of conduct and the details of it. The admissibility of such direct evidence may well be suspect but the state did not object.

Prior Bad Acts

■ Under the category of "prior bad acts," defendant has two objections. During his direct examination of Wonzy about defendant's confession, the prosecutor asked her, "Did ... [defendant] at some point lash out at the windshield of the car?" Defendant objected, the court sustained the objection, and the state withdrew the question. There was no error.

■ The second comment came from Wonzy herself. On cross-examination, defense counsel read from Wonzy's statement to the police. On redirect, the prosecution asked Wonzy what her response had been when asked whether she believed defendant had committed the murder. Wonzy replied: "I didn't at that time 'cause he was never rough with me or anything like that then, and then when we lived down in Tucson that's when he started being rough with me." Defense counsel did not object to this answer or ask the court for an instruction to disregard it, possibly because the answer to some extent supported the

defendant's contentions that his confessions were untrustworthy. In addition, the remark was unsolicited; thus, we find no error. *See State v. Koch*, 138 Ariz. 99, 102, 673 P.2d 297, 300 (1983). Even if it was capable of being construed as evidence of a "prior bad act," defendant failed to object. Clearly, the answer did not constitute fundamental error.

Sufficiency of the Evidence

Defendant contends that the evidence in this case is insufficient to support the verdict. We will uphold the verdict below if "there exists substantial evidence from the entire record from which a rational trier of fact could have found guilt beyond a reasonable doubt." *State v. Schad*, 129 Ariz. 557, 572, 633 P.2d 366, 381 (1981), *cert. denied*, 455 U.S. 983, 102 S.Ct. 1492, 71 L.Ed.2d 693 (1982) (quoting *State v. Tison*, 129 Ariz. 546, 553, 633 P.2d 355, 362 (1981), *cert. denied*, 459 U.S. 882, 103 S.Ct. 180, 74 L.Ed.2d 147, *reh'g denied*, 459 U.S. 1024, 103 S.Ct. 391, 74 L.Ed.2d 520 (1982)).

■ Despite the fact that the only evidence linking defendant to the murder were his four confessions, ample evidence exists to support the conviction. The defendant independently told four persons about the murder. His story included details about the manner and location of the murder undisclosed by the press.

The most extensive testimony came from defendant's brother, Lewis. He testified that defendant told him that he robbed a gas station in Kingman and murdered the attendant. According to Lewis, defendant claimed he entered the gas station when the victim was locking up. Defendant also told Lewis that he took the victim to the bathroom and made him kneel in front of the toilet and then shot him in the back of the head. This explanation correlates with the discovery of the victim in a position indicating that he was kneeling when shot and had not moved from the place where

4. The state argues that the disputed evidence is also independently admissible under Rule 405(b) which, under certain limited circumstances, permits the introduction of specific instances of conduct. Having determined that the evidence was admissible under Rule 404(a)(1) and was properly presented under Rule 405(a), we do not address the state's alternative Rule 405(b) argument and express no opinion concerning it.

he was shot. Defendant told Lewis that he shot the victim "execution-style" so that the police would think the murder was a "gangland" killing.

Defendant argues that the victim's body was not found in front of the toilet (as per his confession) but in a hallway leading to the toilet. This is a meaningless distinction. A diagram of the murder scene shows the murderer went through a door marked "Men's Restroom" into a short hall. At the opposite end of the hall, a door leads to the toilet. The body was found in this second doorway. The jury saw the diagram of the layout and heard Lewis's testimony. Obviously, it found the claimed discrepancy immaterial.

Tanya Wainscott, defendant's sister, testified that defendant told her that he and two other men murdered a gas station attendant in Kingman. She further testified that defendant told her they "made ... [the victim] get down on his hands and knees and shot him in the back of the head." Defendant also told her that after the murder he went home, went to bed, and listened to the news accounts of the murder the next day.

Darci Rockwell, Lewis's wife, testified that defendant told her he killed a man at a gas station. However, she could not remember whether defendant or Lewis told her the details of the murder.

Defendant's former girlfriend, Bobbi Wonzy, also testified that defendant told her that he and another man robbed a gas station. He claimed that as they were leaving the station, he went back and shot the victim in the bathroom.

Some evidence supports defendant's fabrication defense. It is undisputed that defendant often bragged about criminal activity. Both Darci and Lewis testified that defendant tried to impress them with the story of the murder and that defendant claimed responsibility for other crimes as well. Tanya Wainscott testified that defendant claimed he could be a "hit man." In addition, Lewis testified that defendant claimed he assaulted a highway patrolman with a tire iron in northern California. Lewis knew this to be false. However,

defendant also bragged about crimes he did commit. For example, he told Lewis about the donut shop incident and the assault on the child.

The defendant's alibi also affords him little relief. Defendant's alibi only establishes that he was supposed to be at work at the time of the crime; however, no witnesses placed him at his place of employment during the hours in which the victim was murdered. In addition, defendant claimed the murder was committed with others, therefore, one of his co-felons could have provided transportation to and from the murder scene.

The evidence could reasonably lead the jury to conclude that defendant is a person who routinely boasted of committing criminal acts, some of which he had committed and some of which he had not. Given the nature and details of defendant's confessions, the evidence is sufficient to sustain the jury's finding that, in this instance, defendant's boasting was truthful.

Ineffective Assistance of Counsel

■ In his petition for post-conviction relief, defendant claimed ineffective assistance of counsel. The trial court denied the petition without holding an evidentiary hearing. To decide this claim, we look at (1) whether counsel's performance was reasonable under the circumstances of the particular case, *State v. Nash*, 143 Ariz. 392, 397, 694 P.2d 222, 227, *cert. denied*, 471 U.S. 1143, 105 S.Ct. 2689, 86 L.Ed.2d 706 (1985), and (2) whether there exists a "reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. Lee*, 142 Ariz. 210, 214, 689 P.2d 153, 157 (1984) (quoting *Strickland v. Washington*, 466 U.S. 668, 693, 104 S.Ct. 2052, 2068, 80 L.Ed.2d 674, 698 (1984)). The defendant must prove both prongs of this test. Failure to prove either one renders the claim insufficient. *State v. Salazar*, 146 Ariz. 540, 541, 707 P.2d 944, 945 (1985).

■ Defendant claims three instances of ineffective assistance. First, he cites his counsel's failure to call Dr. Almer at trial.

Dr. Almer examined defendant pursuant to Rule 11 of the Arizona Rules of Criminal Procedure to determine defendant's competency to stand trial. Dr. Almer concluded that defendant was competent to stand trial and understand the proceedings against him. He also found defendant competent to decide whether to waive his rights and plead guilty.

The state moved in limine to preclude Dr. Almer from testifying as to his opinion concerning the truthfulness of defendant's confessions and concerning defendant's tendency to brag. At the hearing on the motion, defense counsel stated he was unable to contact Dr. Almer and stated he did not know what Dr. Almer could testify to beyond the contents of the Rule 11 report. The court indicated it would allow Dr. Almer to testify about his observations of the defendant if Dr. Almer had reached a medical diagnosis based on those observations. The defense never presented evidence of a further diagnosis and did not call Dr. Almer at trial. Defendant now claims that his counsel's failure to call Dr. Almer as a witness constituted ineffective assistance of counsel; we disagree.

Defendant claims that Dr. Almer concluded that defendant's amputated leg caused him to suffer anger, animosity, and feelings of inferiority, and that, in Dr. Almer's opinion, defendant fabricated stories to combat these feelings. Defendant also claims that the trial court was inclined to allow Dr. Almer to testify.

Our review of Dr. Almer's Rule 11 report, and the transcript of the hearing on the motion in limine, does not support defendant's assertions. Dr. Almer merely related what defendant had told him; he did not render a medical opinion on the existence of a personality disorder or the truthfulness of defendant's confessions. The trial court ruled that it was inclined to allow Dr. Almer to testify if Dr. Almer could make a medical diagnosis. Defendant does not allege that Dr. Almer eventually made a medical diagnosis or was willing to testify to one. He simply alleges without support that trial counsel "forgot" to call Dr. Almer. Even if defendant's

assertions were true, the report itself did not raise a reasonable possibility that Dr. Almer's testimony would have changed the result; therefore, failure to call Dr. Almer does not constitute ineffective assistance. *See State v. Smith*, 158 Ariz. 222, 762 P.2d 509 (1988). We do note that Dr. Almer's Rule 11 findings were made available to the trial court at the sentencing stage.

■ Second, defendant claims that his counsel provided ineffective assistance when he stipulated to the judge informing the jury of the fact of defendant's other crimes. Defense counsel's decision was not ineffective assistance, but rather strategic. It was calculated to, and did, keep out evidence of any tangible, documentary evidence of defendant's convictions. Moreover, before accepting the stipulation, the trial court directly asked defendant if he agreed with the stipulation. He did. Under the unusual circumstances of this case, the evidence was admissible without the stipulation, potentially in a far more damaging form. Counsel was not ineffective for entering into the stipulation.

Finally, defendant alleges that counsel was ineffective for failing to move for a judgment of acquittal at the close of the state's case. Our review of the record, however, reveals that counsel did make such a motion and the court properly denied it. As we have already discussed, the denial was proper.

Special Verdict

■ Defendant alleges two defects in the special verdict. First, he argues that the trial court failed affirmatively to state on the record that it found the aggravating circumstances beyond a reasonable doubt. We rejected this argument in *State v. Beaty*, 158 Ariz. 232, 246, 762 P.2d 519, 533 (1988), and do so here. Unless the record indicates otherwise, we will presume the judge applied the proper standard of proof. *Id.*

Second, defendant claims the trial court violated A.R.S. § 13–703(D), which requires the court to find the existence or non-existence of each statutory aggravating circumstance and any mitigating factors. Be-

cause we are modifying defendant's sentence to life, this claim is moot.

## Statutory Aggravating Circumstances

■ Our statutes preclude the death penalty unless the first degree murder is accompanied by at least one of seven statutory aggravating circumstances. A.R.S. § 13–703(E). The state must prove aggravating circumstances beyond a reasonable doubt. *State v. Richmond,* 136 Ariz. 312, 666 P.2d 57, *cert. denied,* 464 U.S. 986, 104 S.Ct. 435, 78 L.Ed.2d 367 (1983). If the court finds at least one aggravating circumstance, the defendant is eligible for the death penalty. The trial court must then consider any and all mitigating evidence relevant to the propriety of imposing a death sentence in the particular case. The defendant bears the burden of proving mitigating circumstances, but need do so only by a preponderance of the evidence. *State v. McMurtrey,* 143 Ariz. 71, 73, 691 P.2d 1099, 1101 (1984), *appeal after remand,* 151 Ariz. 105, 726 P.2d 202 (1986), *cert. denied,* 480 U.S. 911, 107 S.Ct. 1359, 94 L.Ed.2d 530 (1987).

■ At the sentencing hearing, the state urged as aggravating factors (1) the prior conviction for the Tucson robbery, (2) the prior conviction for the Kingman assault on the child, and (3) pecuniary gain. *See* A.R.S. § 13–703(F)(2) and (5). The trial court found all three aggravating factors to exist.

At sentencing, the state produced no evidence of the prior convictions. Instead, it relied on the presentence report and the stipulation received at trial. In its sentencing memorandum, the state asserted that the two prior convictions were "proved by stipulation at trial." What the state overlooked is that the stipulation did not prove the convictions—it only proved certain criminal acts. Indeed, the whole purpose and intent of the stipulation was to prove the acts and not prove the convictions. The reference in the presentence report to the convictions is entirely hearsay. In cases like this, the state usually meets its burden of proving a prior conviction by offering into evidence a certified copy of the conviction and establishing the defendant as the person to whom the document refers. *State v. Lee,* 114 Ariz. 101, 105, 559 P.2d 657, 661 (1976). With commendable candor, the state virtually conceded at oral argument that it had failed to prove the two prior convictions in the trial court. We agree. Therefore, the trial court could not properly use the two prior convictions as aggravating factors.

■ To establish pecuniary gain as an aggravating circumstance, A.R.S. § 13–703(F)(5) requires that defendant's motive for the murder be the expectation of pecuniary gain. *State v. Carriger,* 143 Ariz. 142, 692 P.2d 991 (1984), *cert. denied,* 471 U.S. 1111, 105 S.Ct. 2347, 85 L.Ed.2d 864 (1985). Pecuniary gain must be the reason for the murder and not merely the result. *State v. Libberton,* 141 Ariz. 132, 685 P.2d 1284 (1984).

■ The record clearly supports the conclusion that defendant murdered the victim to facilitate the robbery. The cash register at the Bingo Truck Stop was empty except for the bills underneath the money drawer. The defendant referred to the incident as a robbery in his confessions. The victim was shot, apparently without a struggle. The only logical inference is that defendant murdered the victim to further the robbery. Even if he shot the victim after the money was taken from the drawer, the murder was part and parcel of the robbery because it resulted in eliminating the only witness to the crime. *See State v. Correll,* 148 Ariz. 468, 715 P.2d 721 (1986). We affirm the trial court's finding of pecuniary gain as an aggravating circumstance.

## Propriety of Death Sentence

Our death penalty statute instructs that "[m]itigating circumstances shall be any factors ... which are relevant in determining whether to impose a sentence less than death." A.R.S. § 13–703(G). In addition, we have repeatedly stated that "the death penalty [should be] reserved for those who stand out from the norm of first degree murderers either because of the act committed or because of the defendant's back-

ground." *State v. Smith,* 146 Ariz. 491, 505, 707 P.2d 289, 303 (1985); *see also State v. Watson,* 129 Ariz. 60, 63, 628 P.2d 943, 946 (1981).

Defendant urged his age at the time of the offense, twenty-one, as a mitigating circumstance. The trial court, focusing on defendant's criminal acts after the murder, concluded that defendant's age was not sufficient mitigation to outweigh the three aggravating circumstances.

 A defendant's age may be a substantial and relevant mitigating factor. *State v. Valencia,* 132 Ariz. 248, 645 P.2d 239 (1982). *See also State v. Vickers,* 129 Ariz. 506, 633 P.2d 315 (1981). To decide whether age should be a mitigating circumstance in a particular case, we look at defendant's maturity, judgment, and involvement in the crime. *State v. Gerlaugh,* 144 Ariz. 449, 698 P.2d 694 (1985) (defendant was mature for his age and leader in the commission of the murder); *State v. Gillies,* 142 Ariz. 564, 691 P.2d 655 (1984), *cert. denied,* 470 U.S. 1059, 105 S.Ct. 1775, 84 L.Ed.2d 834 (1985) (impact of age twenty minimized by extent and duration of defendant's participation in murder where defendant raped the victim two times, held her captive for several hours, inflicted great physical and emotional pain, and buried her, possibly while she was still alive).

 We agree with the sentencing judge's analysis that defendant's age at the time of the offense was probably not sufficient mitigation to outweigh three statutory aggravating circumstances. However, in the face of only one aggravating circumstance—pecuniary gain—defendant's age, along with other mitigation that we find to exist, is sufficiently substantial to reduce to a life sentence under our statutory scheme. *See State v. Graham,* 135 Ariz. 209, 660 P.2d 460 (1983) (death sentence reduced to life because mitigating factors of age, mental health, and defendant's character outweighed the one aggravating circumstance of pecuniary gain).

This defendant's character and background, together with his age at the time of the murder and the unique circumstances of his conviction, cause us to conclude that a sentence of death is inappropriate in this case. At age seventeen defendant was involved in a serious motorcycle accident in which he was apparently not at fault. As a result of that accident, defendant lost his right leg and sustained serious head injuries. Family members attest that his violent and unpredictable behavior began after this tragic accident, as did his alcoholism and his need to appear macho.

From the record, it is apparent that the trauma of losing his leg has caused defendant to become destructive and unpredictable. He turned to alcohol and modeled himself after his brother Lewis. The defendant and Lewis had what one examining psychiatrist termed a "destructive abnormally symbiotic relationship." The intensely competitive relationship between defendant and Lewis was primarily manifested through criminal behavior—each would try to outdo the other's criminal escapades. One other way in which this competition was played out was with members of the opposite sex. An unusual pattern developed where defendant would be involved in a relationship with a woman and Lewis would end up "stealing" her away. Without minimizing the enormity of defendant's crime, we conclude that defendant's background and emotional character, while not making defendant unaccountable for his crime, is a factor that may appropriately be considered in mitigation.

We note that the probation officer who prepared the presentence report in this case recommended against the death penalty, in large part because of the nature of the case against defendant. He observed that virtually the entire case against defendant amounted to the confessions defendant made to his family members and friends, that no physical evidence or eyewitness connected defendant to the crime, and that no murder weapon was ever recovered. He also noted that defendant was known to brag at times about crimes he did not commit and that he claimed to have an alibi, albeit a weak one.

In our independent review in this case, it is our responsibility to balance all relevant factors against the one statutory aggravat-

ing circumstance which was proved by the state to determine whether the death sentence should be imposed. In discharging that responsibility we have stated:

> The question before us is not whether the trial court properly imposed the death penalty, but whether, based upon the record before us, we believe that the death penalty should be imposed. A finding merely that the imposition of the death penalty by the trial court was "factually supported" or "justified by the evidence" is not the separate and independent judgment by this court that the death penalty warrants.

*Watson,* 129 Ariz. at 63, 628 P.2d at 946.

The significant mitigating evidence this case presents balanced against a single aggravating factor causes us to question whether a death sentence is warranted here. That being the case, we will continue to adhere to the principle that, "[w]here there is a doubt whether the death penalty should be imposed, we will resolve that doubt in favor of a life sentence." *Valencia,* 132 Ariz. at 250, 645 P.2d at 241.

### DISPOSITION

Pursuant to A.R.S. § 13–4035 we have searched the record for fundamental error and found none. Accordingly, we affirm the convictions. The sentence of death on the murder count is reduced to life imprisonment without possibility of parole for twenty-five years pursuant to A.R.S. § 13–703(A). The life imprisonment sentence shall, like the robbery sentence, be consecutive to the sentences the defendant was serving when he was originally sentenced in this case.

GORDON, C.J., and FELDMAN, V.C.J., and CAMERON, J., concur.

HOLOHAN, J., participated in this matter but retired prior to the filing of this opinion. CORCORAN, J., did not participate in the determination of this matter.