JUSTICE BOLICK,
with whom VICE CHIEF JUSTICE PELANDER joins, concurring.
¶ 21 I join fully the Court’s opinion, which is compelled by the United States Supreme Court’s decisions in Miller and Montgomery. I write to further explain the context in which we address these issues and to express serious concerns over the direction in which the Supreme Court appears to be headed.
¶ 22 The murders in these cases were brutal. In 1994, sixteen-year-old Joey Lee Healer boiTowed a sawed-off rifle and entered the home of Chester Iserman, an elderly man who had given Healer odd jobs so he could earn money. Healer shot Iserman through the eye, killing him, and then stole his truck. In 1995, seventeen-year-old Gregory Valencia and a younger accomplice entered a condominium complex, took a bicycle from an enclosed patio, and tried to enter another unit’s patio. When the homeowner, Fred George, heard his patio gate rattling, he came out to confront the thieves. Valencia’s accomplice threw the stolen bicycle at George and Valencia shot him in the head, killing him. Healer and Valencia were both convicted of first-degree murder. Even after considering mitigating evidence including the juveniles’ ages, the court sentenced each defendant to natural life in prison.
¶ 23 Though Miller implied that our state’s laws mandate life without possibility of parole in circumstances like those presented here, 132 S.Ct. at 2473 n.13, Arizona currently requires (and did so when these sentences were issued) trial courts to consider age as a mitigating factor in determining punishment for first-degree murder. See A.R.S. § 13-701(E)(1). Indeed, courts must consider not only a juvenile’s age but also the “level of maturity, judgment and involvement in the crime.” State v. Greenway, 170 Ariz. 155, 170, *211 823 P.2d 22, 37 (1991). The state does not mandate life sentences without parole for such offenses. See A.R.S. § 13-752(A). However, because Arizona abolished parole for all crimes committed after January 1, 1994, see 1993 Ariz. Sess. Laws, ch. 255, § 86; see also A.R.S. § 41-1604.09(1), an individual sentenced to life in prison for a minimum number of years is unlikely to be released.[1] And, of course, convicted juvenile murderers like Healer and Valencia who received natural life sentences have no possibility for parole.
¶ 24 In Roper, 543 U.S. at 568, 125 S.Ct. 1183, the Court held that imposition of the death penalty on persons who committed murder when under age eighteen violates the Eighth Amendment’s prohibition against cruel and unusual punishment. The Court differentiated between juvenile and adult offenders on three grounds: (1) underdeveloped maturity and sense of responsibility among young people may lead to reckless behavior; (2) juveniles are more susceptible to outside pressures and negative influences; and (3) youth character is less firmly developed. Id. at 569-70, 125 S.Ct. 1183. Those considerations led the Court to conclude that “the death penalty is disproportionate punishment for offenders under 18.” Id. at 575, 125 S.Ct. 1183.
¶ 25 Seven years later in Miller, the Court extended that reasoning to mandatory life sentences without possibility of parole, stating that “[b]y making youth (and all that accompanies it) irrelevant to imposition of that harshest prison sentence, such a scheme poses too great a risk of disproportionate punishment.” 132 S.Ct. at 2469. Rather than categorically prohibiting such sentences, however, the Court held that sentencers must “take into account how children are different, and how those differences counsel against irrevocably sentencing them to a lifetime in prison.” Id.
¶ 26 In Montgomery, the Court was posed with a single question: did Miller announce a new substantive rule, which has retroactive effect, or a procedural one, which generally does not? 136 S.Ct. at 726; see also Teague v. Lane, 489 U.S. 288, 311, 109 S.Ct. 1060, 103 L.Ed.2d 334 (1989) (applying retroactively “watershed rules of criminal procedure”). Searching in vain to find such a substantive rule in Miller, the Court instead created one in Montgomery, reasoning that the unannounced rule that courts must make a finding of “irreparable corruption” before sentencing a juvenile offender to life imprisonment without parole, id. at 735, was implicit in the earlier case. “That Miller did not impose a formal factfinding requirement does not leave the States free to sentence a child whose crime reflects transient immaturity to life without parole,” Id. By retroactively grafting a substantive rule upon its prior ruling, the Court in turn rendered Miller, as modified, retroactive as well. As a result, Arizona, like many other states, must now reconsider sentences imposed in some instances many decades ago, in a largely unguided effort to determine today whether people long behind bars were “irreparablfy] eorrupt[ed]” when they committed the murders underlying their convictions. See Roper, 543 U.S. at 573, 125 S.Ct. 1183 (noting the difficulty of differentiating between transient immaturity and irreparable corruption).
¶ 27 I agree with concerns expressed by the Miller and Montgomery dissenters. First, the Court has effectively amended the Eighth Amendment to prohibit cruel or unusual punishment, rather than cruel and unusual punishment, which is how the text reads. See Miller, 132 S.Ct. at 2487-90 (Alito, J., dissenting) (stating that the “Court long ago abandoned the original meaning of the Eighth Amendment”). Second, the Montgomery Court’s suggestion that states can avoid re-litigating old sentences “by permitting juvenile homicide offenders to be considered for parole, rather than by resentencing them,” 136 S.Ct. at 736, amounts to none-too-subtle coercion. See id. at 744 (Scalia, J., dissenting) (“And then, in Godfather fashion, the majority makes state legislatures an offer they can’t refuse: Avoid all the utterly impossible nonsense we have prescribed by simply ‘permitting juvenile homicide offenders to be considered for parole.’ ”).
*212-224 ¶ 28 But even more troubling from a practical standpoint is the Court’s sweeping pronouncement that the “vast majority” of juvenile offenders must be shielded from lifetime confinement. Id. at 734. By announcing in advance that most murders committed by juveniles “reflect the transient immaturity of youth,” the Court trivializes the killers’ actions and culpability. “Transient immaturity” is when my adolescent daughter slugs her big brother. It may even describe peer pressures that influence reckless behavior. But it is not an apt rationalization for cold-blooded murder.
¶ 29 In Miller, the Court remarked that “we think appropriate occasions for sentencing juveniles to this harshest possible penalty will be uncommon.” 132 S.Ct. at 2469. This “gratuitous prediction,” Chief Justice Roberts responded, “appears to be ... an invitation to overturn life -without parole sentences,” without explicitly “declaring that the Eighth Amendment prohibits them.” Id. at 2481 (Roberts, C.J., dissenting). By Montgomery, “uncommon” evolved into “vast majority,” with the Court attributing to Miller a “conclusion” it never reached: “that the sentence of life without parole is disproportionate for the vast majority of juvenile offenders.” Montgomery, 136 S.Ct. at 736.
¶ 30 We should treat the Court’s forecast that irreparable corruption will not be found in the “vast majority” of cases as speculative and dictum. By being convicted of first-degree murder, juvenile offenders already have been proven “uncommon” and outside of the “vast majority” of young people who manage to avoid committing such heinous crimes. Certainly the victims’ plight is no different whether the murderer is seventeen or seventy, Of course, a life sentence is far more consequential for the former than the latter. Appropriately, Arizona’s laws for decades have required the mitigating considerations of age, maturity, and responsibility—and now, the possibility of parole for those juveniles who were convicted of first-degree murder but not sentenced to natural life. See A.R.S. § 13-716; Vera, 235 Ariz. at 576 ¶ 18, 334 P.3d at 769. We are assured that the Court does “not foreclose” life sentences without parole, Miller, 132 S.Ct. at 2469, as long as the court determines the crime does not reflect transient immaturity. Montgomery, 136 S.Ct. at 734. Within this nebulous construct, sentencers should apply them best judgment, assessing all relevant factors. Our system’s integrity and constitutionality depend not on whether the overall number of sentences of life without parole meted out to youthful murderers are many or few. They depend primarily on whether justice is rendered in individual cases. Cf. McClesky v. Kemp, 481 U.S. 279, 294-95, 107 S.Ct. 1756, 95 L.Ed.2d 262 (1987) (rejecting statistics-based challenge to the death penalty).
¶ 31 The United States Supreme Court observes that a switch to parole eligibility for juvenile murderers in all instances—a result it advocates and portends but does not yet expressly mandate—will make the possibility of release available for those “who demonstrate the truth of Milleds central intuition— that children who commit even heinous crimes are capable of change.” Montgomery, 136 S.Ct. at 736. Such intuition is laudable, but it is no substitute for the rule of law, or for the justice it seeks to secure not only for wrongdoers but for those impacted by the most grievous of crimes.

. Following Miller, the legislature provided that juveniles sentenced to life for a minimum number of years will be eligible for parole once the minimum sentence is served. A.R.S. § 13-716.